**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

CAMELLIA THOMAS                                                                                    PLAINTIFF

V.                            CASE NO.: 2:11CV00089-BD

**MICHAEL J. ASTRUE, Commissioner,
Social Security Administration**                                                                DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff Camellia Thomas appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Supplemental Security income ("SSI") under Title XVI of the Social Security Act (the "Act"). For the following reasons, the decision of the Commissioner must be REVERSED and REMANDED.

**I.    Background:**

Ms. Thomas filed for SSI on August 5, 2008, claiming disability since June 2, 2006, due to her arthritis and right knee surgery. (Tr. 96) After denials initially and upon reconsideration, Ms. Thomas requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 53-54, 55-58, 84-86) The ALJ held a hearing on January 21, 2010, at which Ms. Thomas appeared with her attorney and testified. (Tr. 36-45)

The ALJ issued a decision on March 23, 2010, finding that Ms. Thomas was not disabled for purposes of the Act. (Tr. 13-24) On April 4, 2011, the Appeals Council

denied her request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-4)

At the time of the hearing before the ALJ, Ms. Thomas was 41 years old and was living with her daughters. (Tr. 36, 40, 46) She had graduated from high school and had completed three years of college. (Tr. 100) She had past work as a corrections officer and dietary aide. (Tr. 97)

## II.     Decision of the Administrative Law Judge:

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[1]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g).

The ALJ found that Ms. Thomas had not engaged in substantial gainful activity since August 5, 2008. (Tr. 15) He found that her osteoarthritis and chondromalacia of the knees with history of bilateral meniscus tears status post arthroscopic surgical repair

---

[1] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. § 416.920(a)(4)(iv).

bilaterally and obesity were severe impairments. (Tr. 15) The ALJ also found that Ms. Thomas did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.926). (Tr. 15)

The ALJ determined that Ms. Thomas retained the residual functional capacity ("RFC") to perform a full range of sedentary work. (Tr. 16) The ALJ found that Ms. Thomas could not perform her past relevant work as a corrections officer or dietary aide. But, relying on the Medical-Vocational Guidelines as a framework for decision making, concluded she was not disabled within the meaning of the Act. (Tr. 23)

### III. Analysis:

#### A. *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is something less than a preponderance, but it must be, "sufficient for reasonable minds to find it adequate to support the decision." *Boettcher*, 652 F.3d at 863 (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision. But,

the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

    B.    *The Medical-Vocational Guidelines*

Ms. Thomas claims that the ALJ erred by relying on the Medical-Vocational Guidelines ("the Guidelines") rather than testimony from a vocational expert at step five of the sequential evaluation process. The Commissioner responds that the ALJ considered Ms. Thomas's nonexertional impairments, and that he could rely on the Guidelines because he had concluded that Ms. Thomas was able to perform a full range of sedentary work.

The general rule is that an ALJ must utilize a vocational expert, rather than rely on the Guidelines, where a claimant suffers from nonexertional impairments that limit her ability to perform the full range of guideline work. *Brock v. Astrue*, ___ F.3d ___, 2012 WL 1020242, *2 (8th Cir. 2012) (quoting *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993)). There is, however, a longstanding exception to the rule. An ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the

claimant's residual functional capacity to perform the full range of activities listed in the Guidelines.[2] *Id*. (quoting *Thompson v. Bowen*, 850 F.2d 346 (8th Cir. 1988)). The ALJ must determine, therefore, whether a claimant's nonexertional impairments affect her residual functional capacity in a significant way, so as to preclude her from engaging in the exertional tasks contemplated in the Guidelines. *Thompson*, 850 F.2d at 350.

Here, the ALJ acknowledged that Ms. Thomas's obesity was a severe impairment. He stated that obesity "can cause limitation of function in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may affect ability to do postural functions, such as climbing, balancing, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose tissue in the hands and fingers." (Tr. 20)

The ALJ also acknowledged that Ms. Thomas's obesity contributed to her knee complaints, but concluded that her obesity had been "taken into consideration in limiting her standing/walking." The ALJ also noted that Ms. Thomas alleged that she had a difficult time sitting and frequently needed to change positions. He found, however, that

---

[2]In *Brock*, the Eighth Circuit held that this exception does not apply when an ALJ determines that a claimant has a severe mental impairment. *Brock*, __ F.3d at __, 2012 WL 1020242, at *4. In *Brock*, the Court distinguished cases where the nonexertional limitation depended on the credibility of subjective testimony about pain from cases where the nonexertional limitation was caused by severe mental impairment. The Court stated that, "pain bears a stronger relationship to the claimant's exertional ability than the effect of severe mental impairments." *Id*. This leaves open a question as to whether the exception applies in cases where an ALJ finds a severe nonexertional impairment, such as obesity, which is not a mental disorder or a pain disorder.

these allegations were not supported by the medical evidence, noting specifically that Ms. Thomas had not been treated for back or neck pain and had not reported difficulty in sitting to her treating physicians.  He also found that there was no medical evidence to support Ms. Thomas's allegation that she had difficulty using her fingers.  (Tr. 22)  He concluded, then, that Ms. Thomas could perform a full range of sedentary work.  (Tr. 21)

In reports Ms. Thomas submitted to the Commissioner, she alleged difficulty sitting for very long in one position.  (Tr. 111, 114, 145)  She also alleged that she could not hold change in her fingers and had difficulty buttoning.  (Tr. 117, 145)  And at the hearing, she complained of problems with her knees, feet, hips, shoulders, and hands.  (Tr. 39)  She stated that her hips ached when she sat.  (Tr. 40)  She could remain seated for about ten minutes before having to shift her weight to the other hip, she testified.  (Tr. 41)  She testified that her most comfortable position was lying down and she likely spent four hours of her day lying down.  (Tr. 41-42)

In terms of medical evidence related to her obestiy, the consulting examiner, David Webber, M.D., observed that Ms. Thomas was 5'5" tall and weighed 220 pounds.  He observed that Ms. Thomas was unable to pick up a coin, walk on heel and toes, and squat/rise from a squatting position.  (Tr. 167)  He concluded Ms. Thomas was moderately limited in her ability to walk, stand, sit, lift, carry, handle, and finger.  (Tr. 168)

On April 19, 2007, David L. Wassell, M.D., an orthopedic specialist at OrthoArkansas, first examined Ms. Thomas.  He noted that Ms. Thomas was obese.  She was 5 feet 4 inches and weighed 213.  (Tr. 191)  He stated that she would benefit from weight loss.  (Tr. 192)

On July 11, 2007, Ms. Thomas returned to Dr. Wassell complaining of right knee pain and "long-standing left-sided hip/trochanteric pain."  Dr. Wassell again noted that her weight was a problem.  (Tr. 189)  He diagnosed her with "status post right knee scope for a meniscal tear and grade 4 arthritic changes" and "left trochanteric bursitis."  (Tr. 189)  He gave her an intraarticular injection in the right knee and the trochanteric bursa on the left hip.  (Tr. 189)

When Ms. Thomas began seeing Sudhir Kumar, M.D., in May, 2010, he also noted that she was obese with a body mass index of more than 30.  (Tr. 270)  He referred her to OrthoArkansas for evaluation and continued treatment of her knees and arthritis.  During the visit to OrthoArkansas on June 14, 2010, Dr. Wassell noted that Ms. Thomas was complaining of pain in her right knee and right greater trochanter.  He recorded that she was "tender over the right greater trochanter, consistent with a right trochanteric bursitis."  (Tr. 272)  He diagnosed continued right knee pain secondary to osteoarthritic changes and trochanteric bursitis in her right side.  He gave Ms. Thomas a steroid injection in the

trochanter on the right side and her right knee. He reiterated that her "biggest problem is continued weight and obesity."[3] (Tr. 272)

Obesity is a nonexertional impairment which "might significantly restrict a claimant's ability to perform the full range of sedentary work, "thus requiring consideration by a vocational expert." *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997). There is substantial evidence in the record to suggest that Ms. Thomas's obesity affected her ability to sit and finger. In these circumstances, the ALJ made an error of law by not hearing from a vocational expert. The ALJ needed that testimony to determine whether Ms. Thomas's severe impairments diminished her capacity to perform sedentary work. *Id.*, see also *Godfrey v. Astrue,* 2012 WL 692905, *1 -2 (E.D.Ark. 2012) (remanding case where ALJ found obesity was a severe impairment).

## IV.  Conclusion:

After consideration of the record as a whole, the Court concludes the decision of the Commissioner is not supported by substantial evidence. The Commissioner's decision is reversed and remanded for action consistent with this opinion. This is a

---

[3]Dr. Kumar's and Dr. Wassell's records from June, 2010, were submitted to the Appeals Council after the ALJ had rendered his decision. (Tr. 1-4) The Appeals Council considered the records when it declined to review the ALJ's decision. (Tr. 1, 4) Consequently, the records may be considered by this Court. See *United States v. Bergmann*, 207 F.3d 1065, 1068 (8th Cir. 2000) (citing *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)) (court's role is to determine whether ALJ's decision is supported by substantial evidence, including evidence submitted after the determination was made).

"sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this 23rd day of April, 2012.

_____
UNITED STATES MAGISTRATE JUDGE